### *INDIANA COMMERCIAL COURT*

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MARION SUPERIOR COURT |
| | ) SS: | |
| COUNTY OF MARION | ) | CAUSE NO. 49D01-1908-PL-035431 |

**F I L E D**

February 18, 2020

*Myla A. Eldridge*

CLERK OF THE COURT
MARION COUNTY
RB

| | |
|---|---|
| TUESDAY INGRAM, individually and On behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| TEACHERS CREDIT UNION | ) ) |
| Defendant. | ) |

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT

This matter comes before the Court on Defendant's, Teachers Credit Union ("TCU"), Motion to Dismiss Plaintiff's, Tuesday Ingram ("Ingram"), Class Action Complaint. TCU filed a Brief in Support of its Motion to Dismiss on October 28, 2019. In response, Ingram filed a Brief in Opposition to TCU's Motion to Dismiss on November 12, 2019. In turn, TCU filed a Reply in Support of its Motion to Dismiss on December 12, 2019. The Court held a hearing on the above motions on January 17, 2020.

Having been fully briefed on the issues set forth in this matter, the Court finds now as follows:

### I.    *RELEVANT FACTS AS ALLEGED*

1. Plaintiff is an account holder at TCU, where she has a checking account. (Compl. ¶ 30.)

2. The account is governed by the Deposit Agreement, an adhesion contract drafted by TCU. (Compl. ¶ 2-4.)

### *TCU's Assessment of Overdraft Fees*

3. On April 2, 2018, Plaintiff was assessed a $32 overdraft fee on a $7.96 debit card transaction that settled that day, although the transaction was previously authorized on a positive account balance and TCU placed a hold on the funds in Plaintiff's account to pay that transaction. (Compl. ¶ 60.)

4. This happened again on March 21, 2018, when TCU assessed an overdraft fee on a $26.45 debit card purchase, which was authorized on a positive account balance and for which sufficient funds were placed on hold. (Compl. ¶ 60.)

5. TCU's Deposit Agreement expressly promises that it will place debit authorization holds on funds associated with specific debit card transactions at authorization and that the held funds cannot be consumed by subsequent transactions. (Compl. ¶ 32.)

6. Despite these promises, TCU fails to use the held funds to pay the authorized transactions when they settle days later. Instead, TCU lets the held funds be consumed by subsequent transactions and then charges overdraft fees on the previously authorized transactions when they are paid into negative funds. (Compl. ¶ 45.)

### *TCU's Assessment of Non-Sufficient Funds (NSF) Fees*

7. On February 16, 2018, Plaintiff attempted an electronic payment via ACH, which TCU rejected due to insufficient funds. (Compl. ¶ 70.)

8. TCU charged a $32 NSF Fee, as the Deposit Agreement permits. However, unbeknownst to Plaintiff and without her request to TCU to reprocess the transaction, TCU reprocessed the same item on February 26, 2018, and again rejected the item due to insufficient funds, and charged Plaintiff another $32 NSF Fee. (Compl. ¶ 71-72.)

9. TCU's Deposit Agreement states that it will charge a $32 NSF Fee per "item" that is returned due to insufficient funds. (Compl. ¶ 78.)

10. In total, TCU charged Plaintiff $64 to process a single item. (Compl. ¶ 70-73.)

## II.     *MOTION TO DISMISS STANDARD*

A motion to dismiss under Trial Rule 12(B)(6) tests the legal sufficiency of a complaint; specifically, "whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief." *Veolia Water Indianapolis, LLC v. Nat'l Trust Ins. Co.*, 3 N.E.3d 1, 4 (Ind. 2014). Thus, the sufficiency of the facts alleged in the complaint are tested "with regards to whether or not they have stated some factual scenario in which a legally actionable injury has occurred." *Trail v. Boys and Girls Clubs of Northwest Ind.*, 845 N.E.2d 130, 134 (Ind. 2006). "When ruling on a T.R. 12(B)(6) motion, the court should consider all of the allegations in the complaint to be true." *Watson v. Auto Advisors, Inc.*, 822 N.E.2d 1017, 1023 (Ind. Ct. App. 2005). And, if "the complaint states a set of facts that, even if true, that would not support the relief requested therein," the Court should dismiss the complaint. *Id.* Motions to dismiss under Trial Rule 12(B)(6) are disfavored "because such motions undermine the policy of deciding causes of action on their merits." *Wertz v. Asset Acceptance, LLC*, 5 N.E.3d 1175, 1178 (Ind. Ct. App. 2014) (citations omitted).

### III.    DISCUSSION

In Ingram's Class Action Complaint, Ingram is alleging: *Count I*: Breach of Contract, including the Covenant of Good Faith and Fair Dealing, and *Count II*: Unjust Enrichment. In this Motion to Dismiss, TCU is arguing that *Count I* and *Count II* of Ingram's Class Action Complaint should be dismissed. This Court will address each argument in turn.

#### A. Count I: Breach of Contract, including the Covenant of Good Faith and Fair Dealing

TCU claims that the Deposit Agreement expressly authorizes the overdraft charges set forth as the basis of Ingram's Complaint. According to TCU, overdraft determinations are made when a transaction is paid, not authorized, and if a transaction is authorized and there is a negative balance at the time the transaction settles, the imposition of overdraft charges are appropriate. TCU further claims that if an ACH transaction is presented multiple times for payment by a vendor and each time the account balance is negative, multiple overdraft fees may be imposed. TCU argues that the Deposit Agreement is not ambiguous, and therefore there has been no breach of contract nor is there an implied duty of good faith and fair dealing.

In response, Ingram claims that TCU's terms and conditions of its Deposit Agreement does not allow TCU to charge overdraft fees on debit card transactions authorized on sufficient funds. Ingram also claims that the Deposit Agreement does not allow TCU to assess multiple non-sufficient funds fees on a single item. Ingram contends that at the very least, TCU's disclosures are ambiguous. Ingram argues that the Deposit Agreement is ambiguous because it does not define key terms in its fee

4

disclosure such as "honor," "to pay," and "debit hold," nor does TCU explain whether it assesses overdraft fees at the time of authorization or settlement. Ingram further argues that because there are many ambiguities in the Deposit Agreement, TCU has an implied contractual duty of good faith and fair dealing. *See Gerdon Auto Sales, Inc. v. John Jones Chrysler Dodge Jeep Ram*, 98 N.E.3d 73, 82 (Ind. Ct. App.), *trans. denied sub nom.* Ingram cites to a number of cases across the country to demonstrate how those courts have analyzed similar contracts and identical fee practices and to show that those court have upheld the plaintiffs' claims and denied the financial institutions' motions to dismiss.

In turn, TCU argues that most of Ingram's out-of-state rulings are so different in scope as to provide this Court no guidance whatsoever. TCU further argues that Ingram cannot inject ambiguity into the overdraft fee provisions of TCU's Deposit Agreement based on different language from other contract that are not before this Court. TCU contends that the Deposit Agreement should be enforced as written.

The essential elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages. *Shumate v. Lycan*, 675 N.E.2d 749, 753 (Ind. Ct. App. 1997), *trans. denied*. According to the Indiana Court of Appeals, where there is a question of contract interpretation, the general rules require courts to consider the contract as a whole. *Celadon Trucking Servs., Inc. v. Wilmoth*, 70 N.E.3d 833, 841 (Ind. Ct. App. 2017). Courts are not limited in that interpretation to the precise arguments made by the parties before the trial court and need not turn a blind eye to contractual provisions that may be relevant to the analysis. *Id*. The goal of contract interpretation is to determine the intent of the parties when they made the agreement.

5

*Tender Loving Care Mgmt., Inc. v. Sherls*, 14 N.E.3d 67, 72 (Ind. Ct. App. 2014). Courts must examine the plain language of the contract, read it in context and, whenever possible, construe it so as to render every word, phrase, and term meaningful, unambiguous, and harmonious with the whole. *Id.* Construction of the terms of a written contract generally is a pure question of law. *Id.* If, however, a contract is ambiguous, the parties may introduce extrinsic evidence of its meaning, and the interpretation becomes a question of fact. *Broadbent v. Fifth Third Bank*, 59 N.E.3d 305, 311 (Ind. Ct. App. 2016), *trans. denied.* A word or phrase is ambiguous if reasonable people could differ as to its meaning. *Id.* A term is not ambiguous solely because the parties disagree about its meaning. *Id.* If contract language is unambiguous, courts may not look to extrinsic evidence to expand, vary, or explain the instrument but must determine the parties' intent from the four corners of the instrument. *Tender Loving Care Mgmt.*, 14 N.E.3d at 72. If a contract is ambiguous . . . , then the courts will impose a duty of good faith and fair dealing. *First Fed. Sav. Bank of Ind. v. Key Mkts., Inc.*, 559 N.E.2d 600, 604 (Ind. 1990). Indiana law does not impose a generalized duty of good faith and fair dealing on every contract however, the relationship between a bank and a checking account holder invokes a duty of good faith and fair dealing to at least the same extent as does a buyer-seller relationship. *See Allison v. Union Hosp., Inc.*, 883 N.E.2d 113, 123 (Ind. Ct. App. 2008); *Am. United Life Ins. Co. v. Douglas*, 808 N.E.2d 690, 701 (Ind. Ct. App. 2004). Cases involving contract interpretation generally are particularly appropriate for summary judgment. *Rusnak v. Brent Wagner Architects*, 55 N.E.3d 834, 840 (Ind. Ct. App. 2016), *trans. denied.*

6

The Court notes that the parties rely on numerous cases, quite a few of which the Court finds are not proper to use at the motion to dismiss stage. Specifically, the parties rely on a number of cases that are either federal cases or cases from other states. The Court finds that these cases cannot be looked to at this stage of the proceedings as the motion dismiss standard will vary not only between federal and state courts but also from state to state.

Based on the Court's reading of the Deposit Agreement, the Court notes that there is a possibility that the language is ambiguous. While the parties invite the Court to interpret the Agreement at the motion to dismiss stage, this Court declines to do so as contract interpretation is to be determined at the summary judgment stage, not the motion to dismiss stage. With respect to the Covenant of Good Faith and Fair Dealing arguments, because the Court must wait until the summary judgment stage to interpret the Deposit Agreement and ultimately determine whether the Deposit Agreement is ambiguous, the Court finds it unnecessary to discuss this argument at the motion to dismiss stage and instead finds that it is to be addressed on summary judgment. The Court, therefore, finds that there are a set of circumstances in which the Plaintiff could be entitled to relief.

The Court hereby DENIES Defendant's Motion to Dismiss Plaintiff's Class Action Complaint with respect to Count I: Breach of Contract.

### B. Count II: Unjust Enrichment

TCU claims that Ingram's claim for unjust enrichment is foreclosed by the existence of the Deposit Agreement. *See Zoeller v. East Chicago Second Century, Inc.*,

7

904 N.E.2d 213, 221 (Ind. 2009) ("When the rights of parties are controlled by an express contract, recovery cannot be based on a theory implied in law."). TCU contends that it is undisputed that Ingram maintained a share draft checking account with TCU pursuant to the Deposit Agreement. TCU argues that the Deposit Agreement governs the contractual relationship between TCU and its customers and, therefore, precludes Ingram from pursuing an unjust enrichment claim.

In response, Ingram claims that TCU incorrectly argues that Ingram's breach of contract claim precludes her from asserting a claim for unjust enrichment. Ingram contends that the Indiana Rules of Trial Procedure provide that: "[a] pleading may set forth two [2] or more statements of a claim or defense alternatively or hypothetically." Ind. R. Trial P. 8(E)(2). Ingram argues that Indiana courts have applied this Rule to find that plaintiffs may pursue claims for breach of contract and unjust enrichment as alternative theories. *See, e.g., City of Indianapolis v. Twin Lakes Enterprises, Inc.*, 568 N.E.2d 1073, 1081 (Ind. Ct. App. 1991).

Unjust enrichment "is a legal fiction invented by the common law courts," that allows a party to seek equitable recovery from "a person who has been unjustly enriched at the expense of another." *Wilson v. Sisters of St. Francis Health Services Inc.*, 952 N.E.2d 793, 796-97 (Ind. Ct. App. 2011). The existence of a contract typically precludes application of the concept of unjust enrichment because the contract provides a remedy, and a plaintiff is barred from pursing an equitable remedy when one exists at law. *King v. Terry*, 805 N.E.2d 397, 400 (Ind. Ct. App. 2004).

However, parties may request alternative theories of recovery as part of a complaint as long as the complaint complies with the Indiana Trial Rules. Ind. R. Trial P.

8

8 (A)(2). Claimants can proceed simultaneously under theories of recovery based in tort and contract under rules of alternative pleading when there has been no determination as matter of law whether the terms of the contract cover all of plaintiff's alleged harms. *See Lawson v. First Union Mortg. Co.*, 786 N.E.2d 279, 284 (Ind. Ct. App. 2003) (holding that a complaint for equitable relief and breach of contract damages could survive a Rule 12(b)(6) motion when it was unclear whether recovery would be viable under contract or in equity).

Here, TCU has requested dismissal of Ingram's claim for unjust enrichment on the basis that equitable relief is precluded by the existence of the Deposit Agreement. As Ingram has pointed out and the Court has noted, parties are permitted to plead alternative theories of recovery for which they may not be able to proceed on all counts to a trial on the merits. When it comes to alternative theories such as breach of contract and unjust enrichment, the alternative theories are permitted to survive the motion to dismiss stage and last until a Court can determine not only whether a contract exists as a matter of law, but also whether recovery would be viable under the contract. Should the Court find that the express terms of the Deposit Agreement do not account for all damages requested by Ingram, the unjust enrichment claim could potentially survive summary judgment. *Coppolillo v. Cort*, 947 N.E.2d 994, 998 (Ind. Ct. App. 2011) ("Stated another way, the existence of a contract, in and of itself, does not preclude equitable relief which is not inconsistent with the contract."). The Court, therefore, finds that dismissal at this stage is inappropriate. The Court will allow Ingram to proceed under these theories through discovery. Again, the Court will likely revisit this issue at the summary judgment stage, and if Ingram is unable to show theories of recovery

9

under both contract and equity, then Ingram will have to choose under which theory it

seeks to pursue recover at any potential trial on the merits. The Court, therefore, finds

that there are a set of circumstances in which the Plaintiff could be entitled to relief.

The Court hereby DENIES Defendant's Motion to Dismiss Plaintiff's Class Action

Complaint with respect to Count II: Unjust Enrichment.

### IV.    ORDER

The Court hereby DENIES Defendant's Motion to Dismiss Plaintiff's Class Action

Complaint.

**SO ORDERED, ADJUDGED, AND DECREED** this ___18th___ day of February, 2020.

*Heather A. Welch*
_____
Hon. Heather A. Welch
Judge, Marion Superior Court
Marion County Commercial Court

Distribution:

Kay Dee Baird
Krieg DeVault LLP
One Indiana Square, Suite 2800
Indianapolis, IN 46204

Mark J. R. Merkle
Scott S. Morrisson
Krieg DeVault LLP
12800 North Meridian St., Suite 300
Carmel, IN 46032

Lynn A. Toops
Vess A. Miller
Lisa M. La Fornara
Elizabeth M. Hyde

10

COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204

Jeffrey Kaliel
Sophia Gold
KALIEL PLLC
1875 Connecticut Av. NW, 10th Floor
Washington, DC 20009