**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DIVISION**

| | | |
|---|---|---|
| Jamila Grice, *on behalf of herself and* | ) | |
| All others similarly situated, | ) | Civil Action No. 7:20-cv-1948-TMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Independent Bank, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before the court are two motions: Defendant Independent Bank's Motion for Summary Judgment, (ECF No. 147), and Plaintiff Jamila Grice's Motion for Class Certification (ECF No. 129). Both motions have been exhaustively briefed by the parties. Having carefully reviewed the materials before it, the court concludes the parties have adequately developed the issues in the record and, therefore, a hearing is unnecessary to decide the matters before the court.

## I. Background and Procedural History

Plaintiff brought this purported class action in the District of South Carolina for breach of contract against Defendant, a regional bank organized under Michigan law and maintaining a physical presence only in Michigan and Ohio. The alleged factual basis for the breach of contract claim in this case is rooted in fees imposed by Defendant in connection with electronic bank transactions by its account holders. Plaintiff, a customer of Defendant now residing in South Carolina, (ECF No. 1 at 3),

alleges that three improper practices of Defendant constituted breach of contract. First, Plaintiff contends Defendant improperly assesses and collects overdraft fees ("OD fees") on accounts that were never actually overdrawn.  (ECF No. 1 at 1). According to Plaintiff, Defendant imposes OD fees on debit card transactions that are initially *authorized* against a positive account balance but later *settled* against an insufficient balance.  (ECF No. 39 at 2–3).  Plaintiff labels such transactions as "Authorize Positive, Purportedly Settle Negative"—or   APPSN—transactions. (ECF Nos. 1 at 3; 129-1 at 1 n.2).  Plaintiff argues that the Account Documents fail to disclose the practice of imposing OD fees on APPSN transactions and that, as a result, such fees breach the contract between Defendant and its account holders. (ECF No. 1 at 5–6).

Second, Plaintiff asserts Defendant breached its agreement with her and other customers by charging non-sufficient funds fees ("NSF fees") multiple times on a single transaction.  (ECF No. 1 at 13–23).  Plaintiff alleges that Defendant does not disclose this practice and that the Account Documents are misleading in this regard. *Id*. at 15–17.

Finally, Plaintiff alleges that Defendant assesses multiple out-of-network fees ("OON fees") on withdrawals from out-of-network ATMs when such withdrawals are preceded by a balance inquiry.  (ECF No. 1 at 23–29).  "When an accountholder uses a non-Independent ATM, the ATM owner charges a consumer a usage fee of $3

2

or $4.  [Plaintiff] does not challenge that fee."  (ECF No. 39 at 4).  Likewise, Plaintiff does not dispute the propriety of Defendant's practice of then charging "an OON Fee . . . for the privilege of using a 'foreign' (out-of-network) ATM."  *Id*.   However, Plaintiff "challenges the fact that [Defendant] charges two of these OON Fees for ATM interactions when a 'balance inquiry' is performed as a lead-in to a cash withdrawal," arguing "it is improper [under the Account Documents] to charge three separate [OON] fees for her 30-second [out-of-network] ATM usage."  *Id*.  Plaintiff alleges that Defendant's disclosures to its customers are misleading, failing to explain this practice.  (ECF No. 1 at 25).

Plaintiff brought this purported class action on behalf of herself and all other similarly situated customers against Defendant, asserting a single cause of action for breach of contract based on the allegedly improper practices described above.  (ECF No. 1). In the Complaint, Plaintiff defines three separate proposed nationwide classes—one for each type of allegedly improper fee:

> [1] All accountholders who, during the applicable statute of limitations, were charged OD Fees on APPSN Transactions on an Independent checking account (the "OD Fees Class").

> [2] All accountholders who, during the applicable statute of limitations, were charged multiple NSF Fees on the same item on an Independent checking account (the "Multiple Fees Class").

> [3] All accountholders who, during the applicable statute of limitations, were charged two OON Fees by Independent for a single cash withdrawal at an out of network ATM (the "OON Fees Class").

(ECF No. 1 at 29).

Early in this litigation, Defendant filed a Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to State a Claim. (ECF No. 13). Defendant argued it lacks sufficient contacts with South Carolina that relate to the underlying claims in this action, noting that Defendant maintains no physical presence or employees or agents in South Carolina. (ECF No. 13-1 at 9–14). Defendant further argued that Plaintiff's breach of contract claim fails because "the Account Documents expressly and unambiguously permit [Defendant] to charge the OD Fees, NSF Fees, and OON Fees incurred by Plaintiff." *Id*. at 14. Judge Dawson denied the motion, (ECF No. 39), concluding that, although the court lacks general personal jurisdiction over Defendant, Defendant has sufficient contacts to confer specific personal jurisdiction, *id*. at 7. Specifically, Judge Dawson found that Defendant "purposefully availed itself to South Carolina's jurisdiction by deliberately making its online banking services available to residents of South Carolina and by maintaining South Carolina customers" and that Defendant "purposefully engaged in long-term business activities in South Carolina, and it has known for over a decade that [Plaintiff] was a resident of South Carolina." *Id*. at 9. Judge Dawson further determined that Plaintiff's sole claim for breach of contract is substantially connected to Defendant's "online banking activities because it is through the online account, Account Documents, and the corresponding transactions which form the basis of Plaintiff's claims." *Id*. at 10. As for Defendant's contention

that Plaintiff failed to state a claim upon which relief can be granted, Judge Dawson concluded that the Account Documents "contain sufficient ambiguities which prevent dismissal at this stage." *Id*. at 12.

Defendant next filed a Motion for Partial Summary Judgment, (ECF No. 67), seeking to limit any class to only those individuals residing in South Carolina or individuals whose claims "arise" in South Carolina pursuant to the South Carolina Door Closing Statute, S.C. Code Ann. § 15-5-150.[1]  That is, Defendant sought a ruling limiting the proposed classes "to individuals that can satisfy the South Carolina Door Closing Statute." *Id*. at 13.  The Door Closing Statute "closes the doors of South Carolina's courts for suits . . . involving a foreign cause of action brought by a foreign plaintiff against a foreign corporation," *Proctor & Schwartz, Inc. v. Rollins*, 634 F.2d 738, 739 (4th Cir. 1980).  Federal courts in the District of South Carolina sitting in diversity "must apply § 15-5-150 unless there are affirmative countervailing federal considerations." *Id*. at 739–40 (internal quotation marks omitted).  Judge Dawson denied the motion, concluding that the Door Closing

---

[1] South Carolina's Door Closing Statute provides:

> An action against a corporation created by or under the laws of any other state government or country may be brought in the circuit court: (1) By any resident of this State for any cause of action; or (2) By a plaintiff not a resident of this State when the cause of action shall have arisen or the subject of the action shall be situated within this state.

S.C. Code Ann. § 15-5-150 (emphasis added).

Statute, "standing alone," does not prevent the Plaintiff from representing a nationwide class action that includes plaintiffs who are not residents of South Carolina. (ECF No. 96 at 6 n.3). Judge Dawson noted that "Plaintiff herself can satisfy the Door Closing Statute and, if the requirements of Rule 23 are met, she can represent those similarly situated [non-residents] 'when the cause of action *shall have arisen or the subject of the action shall be situated within this state*.'" *Id.* (quoting S.C. Code Ann. § 15-5-150) (emphasis added). Accordingly, Judge Dawson ruled that "Defendant's Motion for Summary Judgment seeking to dismiss Plaintiff's nationwide class claims and limiting the proposed class to individuals that can satisfy the South Carolina Door Closing Statute (i.e., non-resident putative class members) is rejected." *Id.* at 6–7.[2]

Subsequently, Defendant moved for reconsideration, arguing that the order denying partial summary judgment had erroneously determined Plaintiff "can represent a class of nationwide plaintiffs, the vast majority of which are Michigan residents, because the subject of *her personal action* may be situated in South Carolina." (ECF No. 101 at 2). Stated differently, Defendant challenged Judge Dawson's order on the grounds that it had prematurely determined "**that every**

---

[2] Judge Dawson also denied as moot Defendant's Motion to Amend its Answer to add an affirmative defense based on the South Carolina Door Closing Statute, (ECF No. 68), concluding the Door Closing Statute implicates the Court's subject matter jurisdiction and, therefore, may be raised at any time, (ECF No. 96 at 2 n.1).

**member of the proposed class** has a contract with [Defendant] that was either made or was intended to be performed in South Carolina." *Id*. at 7.

In denying Defendant's Motion for Reconsideration, (ECF No. 101), Judge Dawson rejected Defendant's reading of the order denying partial summary judgment, clarifying that the court had denied partial summary judgment on the Door Closing Statute argument because "[n]either party has offered any evidence *to support or refute* whether Plaintiff's three separate proposed nationwide classes, whose members *may* include residents from other states, will satisfy Rule 23 (or the Door Closing Statute)." (ECF No. 107 at 3) (first emphasis added).

### *Instant Motions for Class Certification (ECF No. 129) and for Summary Judgment (ECF No. 147)*

On August 9, 2022, this case was reassigned to the undersigned judge. (ECF No. 108). After the case was reassigned, Plaintiff moved for certification of each of the above-defined classes. (ECF No. 129). The motion was referred to a magistrate judge for a Report and Recommendation. (ECF No. 143). After considering the voluminous materials submitted by the parties, the magistrate judge issued a detailed and thorough Report concluding that Plaintiff failed to establish the Rule 23 requirement of numerosity and recommending that the court deny Plaintiff's motion for class certification. (ECF No. 161 at 16). The magistrate judge determined that Plaintiff had failed to satisfy the "numerosity requirement," a threshold certification requirement under Rule 23(a) of the Federal Rules of Civil Procedure (FRCP). The

magistrate judge also determined, alternatively, that "even if Plaintiff's [numerosity] allegations were otherwise sufficient, . . . Plaintiff's attempt to establish numerosity would be thwarted by the [South Carolina] Door Closing Statute." *Id*. at 8. Accordingly, the magistrate judge recommended the court deny Plaintiff's Motion for Class Certification. *Id*. at 16. As discussion in more detail below, the parties filed cross-objections to the Report. *See* (ECF No. 164 (Defendant's objections)); (ECF No. 166 (Plaintiff's objections)); (ECF No. 170 (Defendant's reply to Plaintiff's objections)).

Finally, after Plaintiff filed the Motion for Class Certification but before the magistrate judge issued the Report, Defendant filed a Motion for Summary Judgment. (ECF No. 147). Defendant bases its motion on three grounds: (1) that Plaintiff released all of her claims as a result of her membership in a prior settlement class, *id*. at 7–12; (2) that the court lacks personal jurisdiction over Defendant, *id*. at 20–25; and (3) that the Door Closing Statute bars the claims of some putative class members, *id*. at 13–20. Plaintiff filed a response in opposition to summary judgment (ECF No. 153) to which Defendant replied (ECF No. 155).

Were the court to grant Defendant's motion for summary judgment, such a ruling could moot Plaintiff's motion for class certification. *See Muhammad v. Giant Food Inc.*, 108 F. App'x 757, 760 (4th Cir. 2004) (noting the district court concluded that the class certification motion was moot after granting summary judgment in

favor of the defendants as to the claims of each of the named plaintiffs); *Richards v. Direct Energy Servs., LLC*, 915 F.3d 88, 106 (2d Cir. 2019) (affirming the district court's dismissal of the plaintiff's motion for certification as moot where the district court granted summary judgment on all of plaintiff's claims); *Sperling v. Stein Mart, Inc.*, 291 F. Supp. 3d 1076, 1087 (C.D. Cal. 2018) ("When a defendant has obtained summary judgment against putative class plaintiffs, a motion for class certification becomes moot."); *Wu v. Sunrider Corp.*, No. 2:17-cv-04825-DSF, 2018 WL 2717863, at *1 (C.D. Cal. May 29, 2018) (denying class certification motion as moot after granting summary judgment on all of the named plaintiff's claims); *Boykin v. 1 Prospect Park ALF, LLC*, 993 F. Supp. 2d 264, 283 (E.D.N.Y. 2014) ("Because summary judgment is granted on each of the named plaintiffs' claims, it is unnecessary to reach plaintiffs' motion for class certification."). The court, therefore, turns first to the Motion for Summary Judgment.

## II.  Defendant's Motion for Summary Judgment (ECF No. 147)

### Standard of Review

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or

presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Phillips v. Nlyte Software Am. Ltd*., 615 Fed. App'x 151, 152 (4th Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

"'In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party.'" *Sellers v. Keller Unlimited LLC*, 388 F. Supp. 3d 646, 649 (D.S.C. 2019) (quoting *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996)). However, "'[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.'" *McKinney v. G4S Gov't Sols., Inc*., 711 Fed. App'x 130, 134 (4th Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). The moving party has the burden of proving that summary judgment is appropriate. *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Lane & Roderick, Inc*., 736 Fed. App'x 400, 400 (4th Cir. 2018) (citing *Celotex Corp*., 477 U.S. at 322–23). Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or

denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015).

## Discussion

As an initial matter, the court declines to address Defendant's summary judgment motion to the extent it rests on the assertion that the court lacks personal jurisdiction over Defendant. (ECF No. 147 at 20–25). Defendant previously presented this argument in a dispositive motion early in this case. (ECF No. 13). Judge Dawson considered the issue, which was fully briefed, and squarely rejected it, determining that this court can exercise personal jurisdiction over Defendant in this matter. (ECF No. 39). The court refuses to reconsider this contention and, therefore, rejects it as a basis for summary judgment. *See Multiscaff Ltd. v. APTIM Fed. Servs., LLC*, No. 1:23-cv-1369 (DJN), 2024 WL 234736, at *8 (E.D. Va. Jan. 22, 2024) ("Law of the case stands for the narrow proposition that 'the *same* issue presented a second time in the *same* case in the *same* court should lead to the *same* result.'" (quoting *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc))). Defendant also raises the Door Closing Statute for the second time in a motion for summary judgment. (ECF No. 147 at 13–20); *see* (ECF No. 67). The court declines to revisit Judge Dawson's ruling that Defendant is not entitled to

summary judgment under Rule 56 on this particular basis.  Therefore, the court turns to Defendant's argument that Plaintiff released all of her claims as a result of her membership in a prior settlement class.

### *The Glaske Class Settlement*

Defendant contends that there is no genuine issue of material fact that Plaintiff was a member of the settlement class in a prior class action against Defendant on related claims and, as such, has released her current claims against Defendant.  (ECF No. 147 at 7–12).  In January 2018, the Circuit Court for Wayne County, Michigan, approved a settlement in a class action against Defendant Independent regarding overdraft fees and other matters in *Glaske v. Independent Bank Corporation*, (the "*Glaske* Settlement") Case No. 13-009983-CZ.  (ECF No. 135-1).[3]  Defendant highlights this release language made part of the *Glaske* Settlement agreement:

> Plaintiff and each Settlement Class Member, each on behalf of himself or herself and on behalf of his or her respective heirs, assigns, beneficiaries and successors, shall automatically be deemed to have fully and irrevocably released and forever discharged Independent . . . from any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses, and remedies, *whether known or unknown, existing or potential, suspected or unsuspected*, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon or relate to the conduct, omissions, duties, or matters during the Class Period that were or could have been alleged in the Actions, including, without limitation, any claims, actions, causes of action, demands, damages, losses, or remedies relating to, based upon, resulting from, or arising out of (a) *the*

---

[3] Defendant and the named plaintiff in *Glaske* entered into the Settlement and Release in February 2017, (ECF No. 147-1), which was approved approximately one year later.

*assessment of one or multiple Overdraft Fees on an Independent Account or the amount of one or more Overdraft Fees assessed on an Account*, or (b) Independent's High-to-low Debit Card Transaction Sequencing. *The foregoing release includes, by way of example but not limitation, any and all of the following to the extent they involve, result in, or seek recovery or relief for Overdraft Fees* or Independent's High-to-low Debit Card Transaction Sequencing: (1) *the authorization, approval, or handling of any Debit Card Transaction*, (2) any failure to notify or to obtain advance approval when a Debit Card Transaction would or might cause an Independent Account to become overdrawn or further overdrawn or an Overdraft Fee to be assessed, (3) any failure to allow the holder of any Independent Account to opt out of overdrafts, or to publicize or disclose the ability of the holder of any Independent Account to opt out of overdrafts, (4) *any failure to adequately or clearly to disclose, in one or more agreements. Independent's High-to-low Debit Card Transaction Sequencing, Overdraft Fees, or the manner in which Debit Card Transactions are or would be approved, processed, or posted to Independent Accounts*; (5) any conduct or statements encouraging the use of Independent Debit Cards; (6) any advertisements relating to any of the foregoing; and (7) any and all practices attacked in the Complaint, First Amended Complaint, and Second Amended Complaint.

(ECF No. 135-2 at 28–29 (emphasis added)); (ECF No. 147 at 2–3).

The term "Overdraft Fee" is defined as "the fee assessed to a holder of an Account for each item paid when the Account has insufficient funds to cover the item. . . ." (ECF No. 135-2 at 9). The term "Debit Card Transaction" means "any debit transaction effected with a Debit Card, including Point of Sale transactions . . . and ATM transactions." *Id*. at 7. And "High-to-low Debit Card Transaction Sequencing" was defined to mean "Independent's former practice of sequencing an Account's Debit Card Transactions . . . from highest to lowest dollar amount, which results in some instances in the assessment of additional Overdraft Fees that would

not have been assessed if Independent had used . . . the chronological order in which the transactions were initiated . . . or [sequenced] from lowest to highest dollar amount." *Id*. at 9.

The court's order of judgment approving the *Glaske* Settlement indicated the release language encompassed all claims, "known or unknown, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, contingent or non-contingent, which now exist, or heretofore existed, or may hereafter exist, without regard to the subsequent discovery of additional or different facts." (ECF No. 135-1 at 2). "Plaintiff and all Settlement Class Members are hereby forever barred and enjoined from asserting any of the Released Claims including, without limitation, during any appeals from the Final Approval Order and this Final Judgment." *Id.* at 5.

### *Notice of Glaske Settlement and Plaintiff's Receipt of Settlement Funds*

The *Glaske* settlement class consisted of "[a]ll Independent customers in the United States who had one or more non-business accounts and who, during the Class Period, incurred an Overdraft Fee as a result of Independent's High-to-law Debit Card Transaction Sequencing." (ECF 135-1 at 2). The class period, in turn, ran from July 31, 2007 through March 9, 2017. *Id*.

Pursuant to the Settlement agreement, *Glaske* class members received notice in three different ways: via Mail, email and the settlement website. The postcard

mailer and the email notice contained identical language, informing the recipient that "Independent Bank's records show you are a Settlement Class Member," describing the terms of the proposed class settlement, and warning the account holder as follows:

> If you do not want to be legally bound by the Settlement, you must exclude yourself from the Settlement Class by [a given date]. *If you do not exclude yourself, you will release your claims against Independent Bank regarding the bank's overdraft-related practices and fees, and will not be able to sue Independent Bank for any claim relating to the lawsuit*. . . . The detailed notice available at the website explains how to exclude yourself or object. . . .

(ECF No. 147-1 at 42, 44) (emphasis added). The settlement website, which was referenced on the mailer and in the email notice, provided this same general information, but in more detail: "If the settlement becomes final, Settlement Class Members who do not timely request exclusion from the settlement will be releasing Independent Bank from all of the claims described and identified in Section XIV of the Settlement Agreement. This means you will no longer be able to sue Independent Bank regarding any of the claims described in the Settlement Agreement." *Id*. at 50.

The *Glaske* court determined that "Settlement Class Members received the best practicable notice of the Settlement, which notice was reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the Action and the terms of the Settlement, and to afford them an opportunity to present their objections or to request exclusion from the Settlement." (ECF No. 135-1 at 2).

Defendant agreed to a settlement fund of $2,215,000.000 in *Glaske*. (ECF No. 135-2 at 11). From the settlement fund, Defendant issued credits totaling $419,489.27 to 10,371 existing Independent Bank accountholders in March 2018. (ECF No. 147-2 at 1).[4] The account owned by Jamila Grice (formerly, Jamila Thomas), the named Plaintiff in this action, was among those current accounts to be credited a sum from the *Glaske* class settlement. *Id*. at 2. In Plaintiff's case, she received a credit of $21.58. *Id*. at 2. Plaintiff does not challenge that she was a member of the *Glaske* settlement class, that she did not opt out of or seek to be excluded from the *Glaske* settlement or object to its terms, or that she received a portion of the *Glaske* settlement fund. The question becomes, then, whether Plaintiff is precluded by the *Glaske* settlement from bringing the claims in this action.

### *Did Plaintiff Release Current Claims under the Glaske Settlement?*

Defendant contends that, "[w]hile the *Glaske* matter primarily involved Independent's prior practice of high-to-low debit card transaction sequencing, the language of the *Glaske* Settlement Agreement and Release is unambiguously not limited to high-low sequencing." (ECF No. 147 at 9). Defendant believes the *Glaske* release language quoted above "unambiguously released any claim or damages for any Overdraft Fee caused by a Debit Card Transaction (which is defined to include

---

[4] Defendant also issued payments of $955,312.79 from the settlement fund to 27,193 former account holders. (ECF No. 147-2 at 2).

an ATM transaction).ˮ *Id.*  Defendant suggests that because "the claims in the *Glaske*

matter primarily arose due to allegations of [Defendant]'s failure to properly disclose

its overdraft practices, which are precisely the issues in this case," Plaintiff "also

released claims or damages based on 'any failure to adequately or clearly to disclose,

in one or more agreements, Independent's High-to-low Debit Card Transaction

Sequencing, Overdraft Fees, or the manner in which Debit Card Transactions are or

would be approved, processed, or posted to Independent Accounts.'" *Id.* at 9–10

(quoting *Glaske* Settlement Agreement at ¶ 114).

    In response, Plaintiff makes two contentions.  First, Plaintiff argues that class

action releases are governed by special rules of interpretation rather than state

contract law.  (ECF No. 153 at 4–8).  Citing precedent from the Ninth Circuit and

the Second Circuit, Plaintiff argues that, in the class action settlement context,

"'future litigation is always governed by the doctrine of [claim] preclusion and never

by the settlement contract [and by extension, the release contained in the settlement

contract] directly.'"  *Id*. at 4 (quoting *Raquedan v. Volume Servs., Inc*., No. 18-cv-

01139-LHK, 2018 WL 3753505, at *5 (N.D. Cal. Aug. 8, 2018)). Moreover, Plaintiff

suggests that in this context, claim preclusion requires more than that the current

claims arose out of the same transaction or occurrence but that the claims-to-be-

precluded arose out of "the identical factual predicate" as the claims at issue in the

prior case.  (ECF No. 153 at 5).  Applying the identical factual predicate standard to

the claims asserted in *Glaske* and the instant action, Plaintiff urges the court to recognize "the improper banking conduct at issue in *Glaske* was [Defendant]'s practice of sequencing debit card transactions from high to low dollar amounts," and that such conduct "is not at issue here." *Id*. at 6.

Defendant disagrees, arguing the notion that claim preclusion trumps the release language in a settlement agreement lacks support under Michigan law, which expressly applies to the terms of the *Glaske* Settlement agreement.  (ECF No. 155 at 2); *see* (ECF No. 147-1 at 34 ("The Agreement shall be construed in accordance with, and be governed by, the laws of the State of Michigan, without regard to the principles thereof regarding choice of law.")).  According to Defendant, "[t]he fact that a settlement is judicially approved or is a classwide settlement does not change the release analysis: the release language still controls."  (ECF No. 155 at 2). Defendant cites *Weaver v. AEGON USA, LLC*, No. 4:14-cv-03436-RBH, 2015 WL 5691836, at *30 (D.S.C. Sept. 28, 2015), *modified*, No. 4:14-cv-03436-RBH, 2016 WL 1570158 (D.S.C. Apr. 19, 2016), a class action wherein Judge Harwell noted that a "'suit can be barred by the earlier settlement of another suit in either of two ways: res judicata *or* release." *Id*. at *30 (quoting *Reppert v. Marvin Lumber & Cedar Co*., 359 F.3d 53, 56 (1st Cir. 2004)) (emphasis added).

The court agrees with Defendant that even if the claims raised in a subsequent purported class action are not barred by the doctrines of claim preclusion or res

judicata, such claims may still be barred by the release language set forth in a prior settlement agreement. *See, e.g., Weaver*, 2015 WL 5691836, at *30 (analyzing whether a prior class settlement precluded claims under the doctrines of res judicata, collateral estoppel, *and* release); *Reppert*, 359 F.3d at 58–59 (considering whether class claims were precluded by either the doctrines of res judicata or were released by a class settlement and finding claims barred by terms of release). Accordingly, Plaintiff's claims in the instant action may be barred the *Glaske* Settlement agreement, the terms of which, as noted above, are construed according to Michigan law. And, under Michigan law, "[a]n agreement to settle a pending lawsuit is a contract and is to be governed by the legal principles applicable to the construction and interpretation of contracts." *Walbridge Aldinger Co. v. Walcon Corp.*, 525 N.W.2d 489 (Mich. Ct. App. 1994). "A settlement agreement is a binding contract." *Reicher v. SET Enterprises, Inc*., 770 N.W.2d 902 (Mich. Ct. App. 2009). The court is to "read[] the agreement as a whole and attempt[] to apply the plain language of the contract itself." *Edmore v. Crystal Auto. Sys., Inc*., 911 N.W.2d 241 (Mich. T. App. 2017). "The language of a contract is to be given its ordinary, plain meaning; technical, constrained constructions should be avoided." *Id*.

The court concludes that the release language set forth in the *Glaske* Settlement Agreement encompasses Plaintiff's claims in the instant action based on Defendant's imposition of Overdraft fees on APPSN transactions:

> Plaintiff and each Settlement Class Member . . . shall automatically be deemed to have fully and irrevocably released . . . Independent . . . from any and all liabilities, rights, claims, . . . that result from, arise out of, are based upon or relate to the conduct, omissions, duties, or matters during the Class Period that were or could have been alleged in the Actions, including, without limitation, any claims . . . based upon, resulting from, or arising out of (a) *the assessment of one or multiple Overdraft Fees on an Independent Account or the amount of one or more Overdraft Fees assessed on an Account . . . The foregoing release includes, by way of example but not limitation, any and all of the following to the extent they involve, result in, or seek recovery or relief for Overdraft Fees . . .* (1) *the authorization, approval, or handling of any Debit Card Transaction, . . .* (4) *any failure to adequately or clearly to disclose, in one or more agreements, Independent's . . . Overdraft Fees, or the manner in which Debit Card Transactions are or would be approved, processed, or posted to Independent Accounts.*

(ECF No. 135-2 at 28–29).

By its plain terms, however, the *Glaske* Settlement Agreement did not encompass Plaintiff's current claims based on Defendant's practice of charging multiple NSF fees on a single transaction or its practice of assessing multiple OON fees for the use of out-of-network ATMs when transactions are preceded by a balance inquiry. Accordingly, the court concludes Plaintiff, as a result of her membership in the *Glaske* Settlement class, released only her claims based on the assessment of Overdraft fees on APPSN transactions.

### Effect of "Class Period" on Release of OD Claims by Glaske Settlement

Plaintiff next argues that, "even if the Court agrees with Defendant [that the *Glaske* Settlement terms control], the *Glaske* settlement by its terms releases only those claims that accrued before March 9, 2017." *Id*. at 8. Plaintiff relies upon

section XIV, ¶ 114, of the *Glaske* Settlement agreement, entitled "Releases," which

provides:

> Plaintiff and each Settlement Class Member . . . shall automatically be
> deemed to have fully and irrevocably released and forever discharged
> Independent . . . of and from any and all liabilities, rights, claims,
> actions, causes of action, demands, damages, costs, attorneys' fees,
> losses, and remedies, whether known or unknown, existing or potential,
> suspected or unsuspected, . . . that result from, arise out of, are based
> upon or relate to the conduct, omissions, duties, or matters during the
> *Class Period* that were or could have been alleged in the Actions . . . .

(ECF No. 147-1 at 28) (emphasis added).  Because the *Glaske* class period ran from

July 31, 2007 through March 9, 2017, *see* (ECF No. 135-1 at 2), Plaintiff reasons,

therefore, that any claims based on transactions that occurred after March 9, 2017

were not released pursuant to the *Glaske* settlement. (ECF No. 153 at 8).

In response, Defendant asserts that "[t]he Class Period in the instant case

begins on May 19, 2016," (ECF No. 155 at 4 (citing ECF No. 129-1 at 1), and,

therefore, that "Plaintiff's breach of contract claims in the instant matter relate to

[Defendant's] conduct, omissions, or duties with respect to overdraft and/or fee

disclosures that existed well before March 9, 2017" and that "Plaintiff could have

asserted the instant overdraft/fee claims before March 9, 2017, and by agreeing to

the release language that encompasses these claims, she has released them."  (ECF

No. 155 at 4).

The court is not convinced by Defendant's argument.  Although the release

language in the *Glaske* Settlement agreement is broad, the court concludes that it

does not encompass *future* conduct. Pursuant to the Glaske Settlement, Plaintiff indeed released Defendant from all claims "known or unknown, existing or potential," but only to the extent such unknown claims "result from, arise out of, are based upon or relate to the *conduct, omissions, duties, or matters during the Class Period* that were or could have been alleged in the Actions . . . ." (ECF No. 147-1 at 28) (emphasis added). The *Glaske* Class Period ended March 9, 2017; any claim based on conduct *after* March 9, 2017 necessarily could not constitute a claim "result[ing] from, aris[ing] out of, . . . based upon or relate[d] to the conduct, omissions, duties, or matters *during the Class Period*." (ECF No. 147-1 at 28) (emphasis added). Therefore, the court concludes that Plaintiff, pursuant to the plain language of the *Glaske* Settlement Agreement, is barred from asserting claims relating to the assessment of Overdraft fees on APPSN transactions only to the extent such claims are based on conduct occurring prior to March 9, 2017. The court **GRANTS in part and DENIES in part** Defendant's Motion for Summary Judgment (ECF No. 147). The motion is granted only to the extent Plaintiff alleges that Defendant breached its contract with Plaintiff by assessing Overdraft fees on APPSN transactions prior to March 9, 2017.

### III. Plaintiff's Motion for Class Certification (ECF No. 129)

Because Defendant is not entitled to summary judgment on every part of Plaintiff's breach of contract claim, the court must now consider the Motion for

Class Certification. (ECF No. 129). In order to obtain certification of a prospective class, "Rule 23(a) requires that the prospective class comply with four prerequisites": (1) "numerosity"— that the class is so numerous that joinder of all members would be impracticable; (2) "commonality"—that questions of law or fact are common to the class; (3) "typicality"— that the claims or defenses of the representative party are typical of those of the class; and (4) "adequacy of representation"— that the representative party fairly and adequately protects the interests of the class. *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014); *see* Fed. R. Civ. P. 23(a). "Plaintiffs bear the burden of showing that a proposed class satisfies the Rule 23 requirements," *Moyer v. Home Point Fin. Corp.*, No. cv-RDB-20-3449, 2023 WL 6642663, at *4 (D. Md. Oct. 11, 2023), and "certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). If the threshold requirements under Rule 23(a) are met, the action must also fall within one of three categories of class actions described in Rule 23(b). In this case, Plaintiff asserts that this action meets the predominance and superiority requirements of Rule 23(b)(3). *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003).

## Report of the Magistrate Judge

As noted previously, the magistrate judge recommended the court deny the Motion for Class Certification (ECF No. 129) on two grounds. First, the magistrate judge determined that Plaintiff had failed to satisfy Rule 23(a)'s threshold "numerosity requirement":

> Plaintiff has not put forward any evidence showing the members of the Proposed Classes are so numerous that joinder is impracticable. Instead, Plaintiff simply argues that the class includes some number of the approximately 50,000 . . . accountholders and that common sense dictates the actual number of class members to be voluminous. [Id.]
>
> However, Plaintiff has not proffered evidence showing how many accounts were actually assessed any of the disputed fees at issue in this case. The actual number of [Defendant's] accountholders [that were] assessed an allegedly improper fee may be thousands, but the actual number also may be none. In short, Plaintiff has not produced evidence from which this Court can conclude the numerosity requirement is met under the "rigorous analysis" that Rule 23 requires. . . . Although "[t]he court may certify a class based on a common sense estimation of the class size if the precise number of class members is unknown," *Talbott v. GC Servs. Ltd. P'ship*, 191 F.R.D. 99, 102 (W.D. Va. 2000), an "unsubstantiated allegation as to numerosity . . . is insufficient to satisfy Rule 23(a)(1)," *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 215 (D. Md. 1997).
>
> . . .
>
> Indeed, the undersigned finds it compelling that, despite this case entering its third year of litigation, Plaintiff has not identified a single class member other than herself and has not even tried to approximate for the Court how many potential class members actually might be culled from the total number of [Defendant's] customer accounts. Thus, "[w]ithout even a sliver of evidence to base a decision," *id.*, the Court cannot find that Plaintiff has demonstrated numerosity, and the undersigned recommends the motion to certify be denied on that basis.

(ECF No. 161 at 5–8) (footnotes omitted).

Alternatively, the magistrate judge also determined "even if Plaintiff's [numerosity] allegations were otherwise sufficient, . . . Plaintiff's attempt to establish numerosity would be thwarted by the Door Closing Statute." *Id*. at 8. As an initial matter, the magistrate judge acknowledged that Judge Dawson had disagreed with Defendant's argument based on the Door Closing Statute in the context of a summary judgment motion but found it appropriate, in the context of a motion for class certification on which Plaintiff has the burden, to "consider whether the Door Closing Statute forecloses non-resident members from the classes" that Plaintiff sought to certify. *Id*. at 9.

As previously noted, S.C. Code Ann. § 15-5-150—the Door Closing Statute— "closes the doors of South Carolina's courts for suits . . . involving a foreign cause of action brought by a foreign plaintiff against a foreign corporation." *Proctor & Schwartz*, 634 F.2d at 739. The underlying purposes of the Door Closing Statute include "favor[ing] resident plaintiffs over nonresident," "provid[ing] a forum for wrongs connected with the state while avoiding the resolution of wrongs in which the state has little interest," and "encourage[ing] activity and investment within the state by foreign corporations without subjecting them to actions unrelated to their activity within the state." *Hencely v. Fluor Corp., Inc.*, 475 F. Supp. 3d 464, 466–67 (D.S.C. 2020).

Significantly, as the magistrate judge recognized, "the Fourth Circuit has instructed that 'a South Carolina federal court exercising diversity jurisdiction must apply § 15-5-150 unless there are affirmative countervailing federal considerations.'" (ECF No. 161 at 10 (quoting *Proctor & Schwartz*, 634 F.2d at 739–40)); *see Boisvert v. Techtronic Indus. N. Am., Inc*., 56 F. Supp. 3d 750, 752 (D.S.C. 2014). Moreover, courts in this district have concluded that "South Carolina's Door-Closing Statute applies to non-named and non-resident class members." *Tomczak v. United Servs. Auto. Ass'n*, No. 5:21-cv-01564-MGL, 2022 WL 1022647, at *3 (D.S.C. Mar. 31, 2022); *Hart v. Navy Fed. Credit Union*, No. 2:21-cv-44-RMG, 2021 WL 2418459, at *3 (D.S.C. June 11, 2021) (noting that "each member of the putative class must meet the requirements of [the Door Closing Statute]").

The magistrate judge rejected Plaintiff's argument that Fourth Circuit precedent—specifically *Central Wesleyan College v. W.R. Grace & Company*, 6 F.3d 177, 186 n.3 (4th Cir. 1993), and *Ward v. Dixie National Life Insurance Company*, 257 F. App'x 620, 628 (4th Cir. 2007)—established that the Door Closing Statute does not apply to absent class members. (ECF No. 161 at 11–12). The magistrate judge distinguished *Ward* on the grounds that the court expressly stated that it did "not find it necessary to decide" whether the district court correctly concluded that the Door Closing Statue prevented the named plaintiff from representing out-of-state plaintiffs, deciding instead that the named plaintiff failed to satisfy Rule 23(b)(3)'s

requirements. *Id*. (citing *Ward*, 257 F. App'x at 628). As to *Central Wesleyan*'s comment that "[e]ven if non-South Carolina colleges were class representatives, it is doubtful that the statute would apply because of the current countervailing federal policy in favor of consolidating asbestos litigation," 6 F.3d at 186 n.3, the magistrate judge noted that the court was merely reflecting its understanding that "that the Door-Closing Statute applies in federal diversity actions 'unless there are affirmative countervailing federal considerations.'" (ECF No. 161 at 11 (quoting *Tomczak*, 2022 WL 1022647, at *2–3)).

Finally, the magistrate judge rejected Plaintiff's contention that countervailing federal considerations exist in this case—created by Rule 23's mechanism for nationwide class actions—that override the state door closing policy. *Id*. at 14–15. In pertinent part, the Report provides as follows:

> The Court is unaware of any case law identifying Rule 23 as a unique countervailing federal consideration to overcome the Door Closing Statute. As stated above, the Door Closing Statute applies in federal diversity actions "unless there are affirmative countervailing federal considerations." *Szantay v. Beech Aircraft Corp*., 349 F.2d 60, 64 (4th Cir. 1965). As noted by the Fourth Circuit, *Szantay* identified "several countervailing federal considerations: (1) the purpose in the grant of diversity jurisdiction of avoiding discrimination against nonresidents; (2) the policy of encouraging a state to enforce the laws of its sister states; and (3) the fact that South Carolina was the only state in the country in which the two defendants could be joined." *Proctor*, 634 F.2d at 740. The Fourth Circuit "has since limited the need to apply *Szantay* balancing to situations in which a plaintiff has no other available forum in which to bring its action." *California Buffalo v. Glennon-Bittan Grp., Inc*., 910 F. Supp. 255, 257 (D.S.C. 1996) (finding no countervailing federal considerations outweighed the

application of the statute where the plaintiff could have brought his action in North Carolina rather than in South Carolina).

Plaintiff's contention that Rule 23's mechanism for a nationwide class action suit constitutes a countervailing federal interest is not supported by the Fourth Circuit law set forth above. As such, Plaintiff has not identified any legitimate affirmative countervailing federal consideration that would excuse the application of the Door Closing Statute in this case. *See Bumgarder*, 593 F.2d at 573 (concluding the plaintiff had failed to identify any countervailing federal considerations requiring the district court to entertain his suit and to ignore the South Carolina statute and noting "there was an alternate forum to the South Carolina court where [the plaintiff] could gain full relief"). Here, as in *Bumgarder*, Plaintiff has an alternate forum where she can gain relief. Indeed, Plaintiff concedes as much in that she asserts "in the unlikely event this Court is inclined to apply the door closing statute. . . this Court should simply transfer this action to the Western District of Michigan." [Doc. 142 at 15.]

*Id*. at 14–15. Accordingly, the magistrate Judge concluded that "the Door Closing Statute precludes the certification of a class that includes nonresident members," *id*. at 15, and, therefore, "constitutes an additional reason why she has failed to establish numerosity," *id*. at 16. Based on these conclusions, the magistrate judge recommended the court deny Plaintiff's Motion for Class Certification. *Id*.

## Standard of Review

The recommendations set forth in the Report have no presumptive weight, and this court remains responsible for making a final determination in this matter. *Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976)). The court is charged with making a *de novo* determination of those portions of the Report to which a specific objection is made, and the court may

28

accept, reject, modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). Thus, "[t]o trigger de novo review, an objecting party 'must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" *Elijah*, 66 F.4th at 460 (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). However, the court need only review for clear error "those portions which are not objected to—including those portions to which only 'general and conclusory' objections have been made[.]" *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 (D.S.C. 2017); *see also Elijah*, 66 F.4th at 460 (noting that "[i]f a litigant objects only generally, the district court reviews the magistrate's recommendation for clear error only"). Furthermore, "'the court is not obligated to consider new arguments raised by a party for the first time in objections to the magistrate's Report.'" *Floyd v. City of Spartanburg S.C.*, Civ. A. No. 7:20-cv-1305-TMC, 2022 WL 796819, at *9 (D.S.C. Mar. 16, 2022) (quoting *Elliott v. Oldcastle Lawn & Garden, Inc.*, No. 2:16-cv-01929-DCN, 2017 WL 1206408, at *3 (D.S.C. Mar. 31, 2017); *see also Elijah*, 66 F.4th at 460 n. 3 (noting "district court judges are not required to consider new arguments posed in objections to the magistrate's recommendation").

## Objections and Discussion

29

The court first considers Plaintiff's objections to the magistrate judge's analysis, conclusions and recommendation based on the South Carolina Door Closing Statute. Plaintiff first contends that the magistrate judge erred in applying the Door Closing Statute in light of *Farmer v. Monsanto Corp.*, 579 S.E.2d 325, 328 (S.C. 2003), in which the South Carolina Supreme Court considered the application of the Door Closing Statute to a putative class action, construing it to mean "the class itself cannot include members who would not be able to bring the action in their individual capacities under the door-closing statute" and rejecting the argument that the statute is satisfied as long as the class representatives are South Carolina residents. *See id.* In conducting its analysis, the *Farmer* court distinguished *Central Wesleyan* and stated "[t]he statute clearly does not apply to federal suits and the Fourth Circuit's ruling on its non-application in that case is irrelevant." 579 S.E.2d at 328. Plaintiff focuses on the latter sentence and argues that this court must defer to the South Carolina Supreme Court's interpretation of state law. (ECF No. 166 at 9). To bolster this objection, Plaintiff notes that "post-*Farmer*, there are no Fourth Circuit decisions applying the Door Closing Statute in federal court." *Id.* at 10.

The court disagrees. *Farmer*'s dicta that the Door Closing Statute does not apply in federal court clearly is not an interpretation of state law to which this court must defer—in contrast to *Farmer*'s construction of the statute itself to exclude class members who would not be able to individually bring an action under the statute. As explained in *Tuttle Dozer Works, Inc. v. Gyro-Trac (USA), Inc.*, 463 F. Supp. 2d

544, 549 (D.S.C. 2006), which rejected an identical argument, "It has been long held that federal courts sitting in diversity must apply section 15–5–150 unless countervailing federal interests preclude its application" and "[d]espite [Farmer's] statement to the contrary, the statute continues to apply in diversity suits." *Id*. at 549. To underscore this point, there are numerous instances of federal courts in this district applying S.C. Code Ann. § 15-5-150 in federal actions, many of which are cited in the Report.  (ECF No. 161 at 15 n.5); *see, e.g., Tomczak*, 2022 WL 1022647, at *2; *Lane v. Lane*, No. 9:15-cv-1740-RMG, 2015 WL 5918955, at *7 (D.S.C. Oct. 8, 2015); *Criteo SA v. Unique USA, Inc*., No. 0:18-cv-02889-JMC, 2019 WL 3252958, at *4 (D.S.C. July 19, 2019).  Accordingly, the court overrules this objection.

Next, Plaintiff argues the Report is in error because the magistrate judge failed to follow Fourth Circuit precedent "suggesting that the Door Closing Statute does not apply to absent class members."  (ECF No. 166 at 10). The Fourth Circuit decisions upon which Plaintiff relies are *Central Wesleyan* and *Ward*.  The magistrate judge addressed this authority in detail and ably disposed of Plaintiff's argument. (ECF No. 161 at 11–13).  The court agrees with the analysis set forth in the Report and finds that Plaintiff has failed to identify any error in the magistrate judge's analysis of these decisions. Accordingly, the court overrules this objection for the reasons stated in the Report.[5]

---

[5] Plaintiff also cites *Buffalo Seafood House LLC, et al., v. Republic Services Inc., et al*., No. 7-22-cv-1242-RMG, 2023 WL 3737865 (D.S.C. May 30, 2023) in support of her argument that the Door Closing Statute does not apply.  As Defendant points out, however, *Buffalo Seafood* does not opine on the issue of absent class member and "refuses to apply the Door Closing Statute only because

In her next objection, Plaintiff argues the magistrate judge was wrong to reject her contention that "the Door Closing Statute conflicts with Federal Rule of Civil Procedure 23" and, therefore, "the federal rule must control." (ECF No. 166 at 13). Specifically, Plaintiff reasons that "the Door Closing Statute is in direct conflict with Rule 23 because Rule 23 allows nationwide class actions (if the prerequisites are met) and the Door Closing Statute flatly prohibits them." *Id*. Thus, Plaintiff contends that the federal rules, and not the Door-Closing Statute, apply to her claims. *Id*. (relying on *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393 (2010)). The magistrate judge rejected this argument in reliance on Judge Lewis's reasoning in *Tomczak*, 2022 WL 1022647, at *3. (ECF No. 161 at 13). This court, too, finds *Tomczak* persuasive on this issue:

> According to Plaintiffs, because the Door-Closing Statute operates as a bar to nationwide class actions that are governed by Rule 23, then the Door-Closing Statute and Rule 23 conflict with one another and, therefore, satisfy the first step in the *Shady Grove* analysis.
>
> . . . Rule 23 sets forth the elements required for certification of a class in federal court.... Conversely, the Door Closing Statute has nothing to do with the requirements for class certification, and it does address who may bring substantive claims on an individual basis. To the contrary, the Door-Closing Statute deals with whether nonresident plaintiffs, regardless of whether they are individual plaintiffs, class representatives, or class members, are disallowed from suing nonresidents for claims arising outside of South Carolina. Thus, Plaintiffs are unable to prevail on their *Shady Grove* argument as to Rule 23.

---

of countervailing federal interests—specifically, the consolidation of [multiple pending cases]." (ECF No. 170 at 14 (citing *Buffalo Seafood*, 2023 WL 3737865 at *3)).

*Tomczak*, 2022 WL 1022647, at *3 (internal citations and quotation marks omitted). The court agrees with this analysis and, therefore, overrules this objection.

Finally, Plaintiff objects to the magistrate judge's finding that no countervailing federal considerations exist in this case that would trump the application of the Door Closing Statute. (ECF No. 166 at 14–16). One such countervailing federal consideration, according to Plaintiff, is based on Rule 23's framework for bringing a nationwide class action. (ECF No. 166 at 15). The magistrate judge properly rejected this line of reasoning, concluding that no such countervailing federal considerations existed where, as here, Plaintiff likely could have brought this action in another forum where Defendant is headquartered. (ECF No. 166 at 14–15). To the extent that Plaintiff relies on *Buffalo Seafood*, No. 7-22-cv-1242-RMG (D.S.C. May 30, 2023), to support her countervailing federal concerns argument, (ECF No. 166 at 15–16), the court rejects it for the reasons stated in Defendant's reply—that the countervailing concern in *Buffalo Seafood* was the policy favoring consolidation of 17 pending lawsuits across 12 different states. (ECF No. 170 at 16). Such a consideration is not present in the case.

In sum, the court overrules each of Plaintiff's objections to the magistrate judge's analysis of the applicability of the Door Closing Statute and the conclusion that it precludes certification of the putative classes in this action. As a result, the court declines to address the Report's conclusion that Plaintiff failed to establish

numerosity, Plaintiff's objections to the numerosity analysis or the new numerosity evidence submitted after issuance of the Report.

## IV. Conclusion

Based on the forgoing, the court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for Summary Judgment (ECF No. 147).  The motion is granted to the extent Plaintiff alleges that Defendant breached its contract with Plaintiff by assessing Overdraft fees on APPSN transactions prior to March 9, 2017.  Plaintiff's other claims remain.

The court **ADOPTS** the Report's analysis of the South Carolina Door Closing Statute, (ECF No. 161), overrules Plaintiff's objections thereto (ECF No. 166)[6], and finds no reason for deviating from the magistrate judge's recommendation that the court deny class certification on that basis.  Accordingly, Plaintiff's Motion for Class Certification is **DENIED**. (ECF No. 129).

Finally, the court declines Plaintiff's suggestion that this action should be transferred to the Western District of Michigan in lieu of denial of class certification. (ECF No. 166 at 16–17).  Plaintiff buried a request for transfer in passing, as a failsafe, in other motions and responses to motions in this case.  However, she has never filed a motion for a transfer of venue.  The court will not *sua sponte* transfer

---

[6] The court also rejects and overrules Defendant's objections challenging personal jurisdiction once again. (ECF No. 164). This objection is unrelated to the Report and identifies no error in the magistrate judge's analysis or recommendation.

this case pursuant to 28 U.S.C. § 1404(a) where the issues have not been fully briefed and the court is inclined to find that a transfer would not serve the interests of justice where this action has been pending for over three years and Defendant has vigorously litigated the issue of personal jurisdiction in a forum chosen by Plaintiff.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

March 26, 2024
Anderson, South Carolina